United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued May 18, 2000      Decided May 26, 2000

No. 00-5134

In re: Executive Office of the President,
Petitioner

On Petition for Writ of Mandamus

William B. Schultz, Deputy Assistant Attorney General, United States Department of Justice, argued the cause for petitioner.  With him on the petition were David W. Ogden, Acting Assistant Attorney General, Mark B. Stern, Michael S. Raab, and Colette G. Matzzie, Attorneys.

Larry E. Klayman argued the cause and filed the response for respondents.

Before:  Edwards, Chief Judge, Ginsburg and Tatel, Circuit Judges.

Opinion for the Court filed Per Curiam:

Per Curiam:  This matter involves an Emergency Petition for Writ of Mandamus, filed by the Department of Justice on

behalf of the Executive Office of the President ("EOP"), challenging a discovery order by the District Court.

The underlying law suit is a civil action brought by plaintiffs who claim inter alia that the FBI improperly gave the White House FBI files of former political appointees, and that the White House improperly maintained those files, in violation of the Privacy Act, 5 U.S.C. s 552a (1994). The Government moved to dismiss Count II of the complaint for lack of jurisdiction, claiming that the President's personal staff and White House units whose sole function is to advise and assist the President (hereafter referred to as "White House Office") are not "agencies" subject to the Privacy Act. The Government argued that the definition of "agency" in the Privacy Act is taken directly from the Freedom of Information Act ("FOIA"), 5 U.S.C. s 552(f), and the courts consistently have interpreted FOIA to exclude the White House Office. See Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 156 (1980). The District Court, however, denied the motion to dismiss, finding that "the concerns of FOIA and the Privacy Act are quite different." Alexander v. FBI, 971 F. Supp. 603, 606 (D.D.C. 1997). The District Court held, in particular, that the reasons for exempting the White House Office from the definition of "agency" under FOIA did not apply to the Privacy Act. Accordingly, it held that the White House Office constituted an "agency" for the purposes of the Privacy Act. See id. at 606-07.

Recognizing that its holding presented a judgment "as to which there is substantial ground for difference of opinion," the District Court certified the question for appeal under 28 U.S.C. s 1292(b) (1994). See Alexander v. FBI, No. 96-2123 (D.D.C. Aug. 12, 1997) (order certifying interlocutory appeal). This court denied the certified petition for permission to appeal from the interlocutory order, holding that the question raised did not "present a controlling issue of law, the resolution of which [would] materially advance the ultimate termination of the litigation." See Alexander v. FBI, No. 97-8059 (D.C. Cir. Oct. 10, 1997) (order denying permission to appeal interlocutory order).

Following this court's refusal to consider the certified question, plaintiffs pursued discovery in support of their Privacy Act claim.  At issue here is plaintiffs' interrogatory asking for "[a]ny and all knowledge" of Bruce Lindsey, Deputy Counsel to the President, concerning "the release or use of any documents between Kathleen Willey and President Clinton or his aides, or documents relating to telephone calls or visits between Willey and the President or his aides." Emergency Petition for Writ of Mandamus ("Petition") at 8 ("Willey-file Interrogatory").  Although Ms. Willey is neither a named plaintiff in this case nor a putative class member, the District Court nonetheless ruled that the discovery was permissible, because "if the [Willey] file was maintained in a way that implicated the Privacy Act, then its misuse could prove to be circumstantial evidence of file misuse aimed at the plaintiffs in the case at bar."  Alexander v. FBI, 186 F.R.D. 113, 115 (D.D.C. 1998).

EOP nonetheless persisted in objecting to the Willey-file Interrogatory, asserting attorney-client, work-product, and deliberative-process privileges.  In a Memorandum and Order issued on March 29, 2000, the District Court rejected each of the asserted privileges.  See Alexander v. FBI, No. 96-2123, Mem. Op. at 10 (D.D.C. Mar. 29, 2000).  The District Court rejected the attorney-client privilege on the grounds that "EOP [had] not met its burden of establishing that the information withheld pertained to a confidential communication from the client."  Id.  With regard to the work-product privilege, the District Court stated that it was "questionable that the work-product privilege would apply to the discussions at issue," because "there is no prospect of 'litigation'." Id. at 21-22 n.13.  And, finally, the District Court stated that "it appears that the deliberative process privilege would not be applicable in this case," because the "privilege does not apply when a cause of action is directed at the government's intent...."  Id. at 23 n.14 (citations and internal quotation marks omitted).

In dicta, the District Court also rejected the asserted privileges on the ground that, "when the President and the EOP released the [Willey] letters, they were fully aware of

[the District Court's] ruling that the Privacy Act was applicable, and that disclosure of the letters was therefore prohibited by the Privacy Act." Id. at 18. "Thus," according to the District Court, because "the President had the requisite intent for committing a criminal violation of the Privacy Act," id. at 19, and "the release of the Willey letters was a criminal violation of the Privacy Act," id. at 20, the "crime-fraud" exception vitiated the asserted privileges.

EOP now seeks to vacate the District Court's March 29, 2000 Order through this Emergency Writ of Mandamus. "The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." Kerr v. United States District Court, 426 U.S. 394, 402 (1976). In determining whether we are faced with an "extraordinary situation" requiring mandamus relief, we consider:

   (1) whether the party seeking the writ has any other adequate means, such as a direct appeal, to attain the desired relief;

   (2) whether that party will be harmed in a way not correctable on appeal;

   (3) whether the district court clearly erred or abused its discretion;

   (4) whether the district court's order is an oft-repeated error; and

   (5) whether the district court's order raises important and novel problems or issues of law.

National Assoc. of Criminal Defense Lawyers, Inc. v. United States Dep't of Justice, 182 F.3d 981, 987 (D.C. Cir. 1999).

Almost the entire thrust of EOP's petition is that the District Court erred in concluding that the White House is subject to the Privacy Act. And EOP's principal claim for relief is a request that this court "issue a writ of mandamus directing dismissal of the Privacy Act claim." Petition at 20. This court has already ruled that the matter regarding the applicability of the Privacy Act raises a question that properly may be addressed on an appeal of the final judgment in the underlying case. We declined to address the issue as a

certified question under 28 U.S.C. s 1292(b), and we see no basis now to address the issue pursuant to a petition for mandamus. Even assuming, arguendo, that the District Court's holding on the scope of the Privacy Act is clear error, mandamus relief is not warranted in this case. This is so because, on the record at hand, there has been no showing of harm of the sort required to justify the drastic remedy of mandamus. See National Assoc. of Criminal Defense Lawyers, 182 F.3d at 987 ("In no event ... could clear error alone support the issuance of a writ of mandamus in this case because, as we have seen, any error--even a clear one--could be corrected on appeal without irreparable harm either to the Department or to the administration of the FOIA in this circuit.").

EOP first claims that it will suffer serious harm if required to answer the Willey-file Interrogatory, because this will result in the release of information it regards as privileged. There are occasions when mandamus relief may be appropriate to challenge a District Court's discovery order. See, e.g., In re Papandreou, 139 F.3d 247 (D.C. Cir. 1998) (granting mandamus relief of district court order that diplomats submit to depositions); In re: Sealed Case, 151 F.3d 1059 (D.C. Cir. 1998) (granting mandamus where district court's discovery order would have revealed secret grand jury information). As we recognized in Papandreou, "disclosure [of highly privileged material] followed by appeal after final judgment is obviously not adequate in such cases--the cat is out of the bag." 139 F.3d at 251. In the normal course, however, mandamus is not available to review a discovery order. This is especially true when, as here, granting such relief "would permit an application for review of a discovery order to serve in effect as a vehicle for interlocutory review of the underlying merits of the law suit." Pacific Union Conference of Seventh-Day Adventists v. Marshall, 434 U.S. 1305, 1309 (1977). See also Byrd v. Reno, 180 F.3d 298, 303 (D.C. Cir. 1999) (denying mandamus of discovery order where attorney claimed work-product privilege).

EOP has not met its burden of showing the need for mandamus relief to overturn the District Court's denial of the

asserted privileges, because it has offered us no argument that it is even entitled to the privileges. In fact, EOP presents no substantive argument whatsoever in opposition to the trial court's holdings that the attorney-client privilege, work-product privilege, and deliberative-process privilege find no support in this record. Rather, EOP simply says that, "although we have not in this Petition separately briefed the applicability of the work product doctrine and the attorney-client and deliberative process privileges, we continue to disagree with the district court's conclusions on these questions." Petition at 15 n.7. This is far short of what is necessary to support a petition for mandamus relief. Absent a viable claim that some important privilege will be infringed if discovery is allowed to proceed, this court has no jurisdiction to review the interlocutory order on this ground.

EOP's second asserted ground for mandamus relief is that "[t]he district court's order of March 29 now makes the EOP legally accountable for failing to treat [the District Court's] 1997 interlocutory order as if it was legally binding in the ongoing operations of the EOP." Petition at 10. In this regard, EOP claims that mandamus relief is warranted, because the District Court "committed significant legal error in concluding that the President committed a criminal violation by acting inconsistently with [the District Court's] non-binding statement of the law." Petition at 11. In short, EOP contends that the President's interactions with his closest advisors will be irreparably damaged in the future, because the District Court has sought to coerce the White House, on threat of criminal sanction, into following a view of the Privacy Act to which it does not subscribe. EOP's contentions on this score are meritless, because they are based on faulty premises regarding the weight of the District Court's opinion.

We view the District Court's discussion of the crime-fraud exception as unnecessary to his decision. Indeed, it was inappropriate for the District Court gratuitously to invoke sweeping pronouncements on alleged criminal activity that extended well beyond what was necessary to decide the matters at hand. In the March 29, 2000 Order, the District

Court found that EOP had failed to establish that the attorney-client privilege applied; the court also stated that, even without considering the crime-fraud exception, the work-product and deliberative-process privileges were not applicable in this case. There was nothing more to be said. "Too frequently our dicta cause future strains rather than avoid them," Quaker Action Group v. Morton, 516 F.2d 717, 745 (D.C. Cir. 1975) (MacKinnon, J., concurring in part and dissenting in part), and this case may be an example of just that. Nonetheless, the disputed dicta here are of no moment. The District Court's observations on alleged criminal activity are entirely superfluous--they "are not binding on a subsequent court, whether as a matter of stare decisis or as a matter of law of the case," Wilder v. Apfel, 153 F.3d 799, 803 (7th Cir. 1998)--and, thus, they provide no basis for mandamus relief.

   In short, we do not take seriously EOP's argument that the President and the members of the White House Office are now disabled from functioning because of an implicit threat underlying the District Court's Order. As EOP should know, the District Court has no free-wheeling authority to run the affairs of the White House with respect to matters that are not related to the instant case. District Court decisions do not establish the law of the circuit, City Stores Co. v. Lerner Shops, 410 F.2d 1010, 1014 (D.C. Cir. 1969), nor, indeed, do they even establish "the law of the district," Threadgill v. Armstrong World Indus., Inc., 928 F.2d 1366, 1371 (3rd Cir. 1991). The members of the White House Office are under no real threat of criminal prosecution by reason of the District Court's Order, because the court has no control over the decision whether to pursue such criminal actions. In activities unrelated to the instant case, the White House, as it has done for many years on the advice and counsel of the Department of Justice, remains free to adhere to the position that the Privacy Act does not cover members of the White House Office. The District Court's view on this matter will be subject to review on appeal following final judgment in this case.

   In sum, we find no basis upon which to exercise mandamus jurisdiction. The petition is accordingly dismissed.